IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION


THOMAS L. COPING, et al.,

                Plaintiffs,

v.                                       CIVIL ACTION NO.   2:12-cv-00440

ELEMENTIS SPECIALTIES, INC., et al.,

                Defendants.


**MEM. OP. & ORDER**


       Pending before the court is the defendant Elementis Specialties, Inc.'s Motion for Summary Judgment [Docket 55], filed on December 7, 2012. The motion was fully briefed and a motion hearing was held on January 14, 2013. The motion is now ripe for review. For reasons appearing to the court, the motion is **GRANTED** and summary judgment will be entered in favor of the defendant.

      ***I.       Facts and Procedural Background***

       The plaintiff[1] Thomas Coping worked for the defendant Elementis Specialties, Inc. ("Elementis") at its plant in Kanawha County, West Virginia. On February 6, 2010, the plaintiff injured his neck and back while opening a large bay door at the facility. Lifting the door open was part of his required job duties. The door normally retracts upward along tracks. The plaintiff claims

---

[1]       This memorandum opinion and order will refer to Thomas Coping as "the plaintiff." His wife Lori Coping is also a plaintiff, joining the case as a result of her alleged loss of consortium with her husband, but all of the discussion of the defendant's summary judgment motion focuses on Thomas.

that, on the day that he was injured, the door was jammed and would not slide open because the tracks had been bent out of shape by trucks backing into them. He did not wait for a maintenance worker to become available to repair the door. The plaintiff had to pull extremely hard on the door's drive chain to realign it so that the door could be opened. (*See* Deposition of Thomas Coping [Docket 55, Exhibit A] at 68). Later in the day, pain in his upper back made him unable to work, and neck pain developed later. (*See id*. at 68). The plaintiff filed a workers' compensation claim for the injury. The claim for the February 6, 2010 incident was ruled compensable for thoracic and cervical sprain. The evaluating physician told the plaintiff that he would be able to return to work two or three days after the injury. (*See* Deposition of L. Labus [Docket 55, Exhibit E], at 8-9).

The plaintiff claims that he was also injured at work on September 20, 2011 when he was required to replace an old industrial pump with a new one in the dispersion area of the plant. The pumps are very heavy, and must be rolled on a pallet jack. The plaintiff secured the old pump on the pallet jack and was allegedly injured while trying to roll the old jack away. Deposition testimony from one of the plaintiff's coworkers states that he found the plaintiff doubled over, claiming that his back was hurt. (*See* Deposition of J. Phillips [Docket 55, Exhibit B], at 13-14). The plaintiff's coworkers then rolled the pump away on the jack, and the plaintiff was taken to the hospital shortly afterward when he claimed his back was tightening up. The plaintiff filed a workers' compensation claim for the September 20, 2011 injury as well, but it was eventually denied as a non-compensable injury by an Administrative Law Judge ("ALJ") with the Office of Judges. (*See* Decision of ALJ [Docket 55, Exhibit D], at 9-10). Part of the ALJ's decision rested on the fact that the x-rays and other medical analyses of the plaintiff at the hospital showed no

physical evidence of injury. The plaintiff was instead diagnosed with a lumbar strain based on his statements. (*See id.* at 9). The physician claimed stated that any symptoms the plaintiff experienced were probably magnifications of malingering injuries sustained before. (*See id*. at 10). After an evidentiary hearing, the ALJ held that no new, compensable injury was sustained on September 20, 2011.

The plaintiff initiated this lawsuit in the Circuit Court of Kanawha County, and filed an amended complaint on January 13, 2012. The amended complaint names Elementis as a defendant on a claim of "deliberate intention." The complaint also alleges negligence against a John Doe contractor that the plaintiffs baldly assert had control over the plant where Thomas Coping was injured. No facts have ever been developed in the record on this claim, and thus the court will treat the John Doe claim as if it was not included. The case was removed to this court on February 21, 2012. The plaintiffs' second amended complaint [Docket 16] was filed on June 18, 2012. After discovery, the defendant moved for summary judgment [Docket 55] on December 7, 2012. The plaintiffs filed a response [Docket 59], to which the defendant replied [Docket 60]. A motion hearing was held on January 14, 2013, and the motion is now ripe for review. For the reasons stated below, the motion for summary judgment is **GRANTED** and this case will be removed from the active docket.

## II.     *Legal Standard*

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322ç23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### III. Analysis

As part of the state's workers' compensation system, employees in West Virginia have access to a no-fault claim process, meaning they can be compensated for job-related injuries without having to prove negligence or fault of the employer. W. Va. Code § 23-4-2(d)(1). In exchange, the state of West Virginia granted employers immunity from liability "for the injury or death of any employee, however occurring." W. Va. Code § 23-2-6. This system "is intended to remove from the common law tort system all disputes between or among employers and

4

employees regarding the compensation to be received for injury or death to an employee except as expressly provided in this chapter." W. VA. CODE § 23-4-2-(d)(1). The only instance in which an employer loses immunity, and becomes subject to liability for the injuries of its employees, is where the employer "acted with deliberate intention" in causing an employee's injury. W. VA. CODE § 23-4-2(d)(2). Thus, to get around employer immunity and collect damages from the employer, a plaintiff employee must assert a so-called "deliberate intention" claim. *See Blevins v. Beckley Magnetite, Inc.*, 185 W. Va. 633, 641 (1991) ("[I]t is important to remember that the ultimate goal of W. Va. Code § 23-4-2([d])(2)(ii) is to offer an alternative method of proof for a plaintiff to establish that his injury was *deliberately intended* by the employer.") (emphasis original). To prove a claim of deliberate intention against an employer, an employee must prove five elements:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

> (E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

W. Va. Code § 23-4-2(d)(2)(A-E). The plaintiff must prove all elements to recover for an injury. Thus, the two injuries alleged by the plaintiffs in this case will be analyzed separately, and the defendant is entitled to summary judgment on either injury if there is no genuine issue of material fact that the plaintiff cannot prove a single factor as it relates to that injury.

The court must emphasize how high of a bar the state legislature has set for plaintiffs seeking to establish a deliberate intention claim:

> The legislature has plainly indicated the type of allegations which do not sustain a cause of action under W. Va. Code § 23-4-2(c)(2)(i) (1994), which specifically provides that a cause of action under its provision may not be satisfied by an allegation of (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct. The language of this provision demands overcoming a high threshold to establish a cause of action under W. Va. Code § 23-4-2(c)(2)(i).

*Tolliver v. Kroger Co.*, 201 W. Va. 509, 511 syl. 8 (1997).

A.   *Unsafe Working Condition*:

Finding in favor of the plaintiff on the February 6, 2010 injury would require the court to first find that a heavy bay door with damaged opening tracks is an unsafe working condition that presents "a high degree of risk and a strong probability of serious injury or death." W. Va. Code § 23-4-2(d)(2)(A). The plaintiff asserts that the door jammed frequently, and to open it he had to pull very hard on a short chain, which resulted in injuries on February 6, 2010. The defendant argues that an unsafe condition cannot carry "a high degree of risk and a strong probability of serious injury" if employees performed the task thousands of times over many years but injuries

only occurred once. Indeed, Thomas Coping estimated in his deposition that the door has been raised 35,000 times since 1977, and that he is the first person to be hurt opening it. (*See* Deposition of T. Coping [Docket 55, Exhibit A], at 23). The West Virginia Supreme Court of Appeals upheld a lower court's determination that mechanical defects in an automobile—brake, steering, and clutch problems—"may create some degree of risk, but certainly do not create a high degree of risk or strong probability of serious injury or death." *Marcus v. Holley*, 217 W. Va. 508, 521 (2005) (quoting lower court). It seems that if a defective automobile did not qualify as a sufficiently unsafe working condition, then a faulty door that only caused injuries once out of every 35,000 times it was opened would not either. Given that only one injury has occurred in more than thirty years, there is no genuine issue of material fact that the jammed bay door does not rise to the extremely high standard of risk and probability of injury that the legislature demands for deliberate intention claims.

The same is true for the September 20, 2011 injury. The industrial pumps were changed out and rolled away on a pallet jack thousands of times over the decades, and discovery has revealed that no employee has ever filed a workers' compensation claim related to moving an industrial pump on a jack. While it is possible that requiring an employee to lift a heavy door by a short chain or move a heavy pump on a pallet jack is negligent and may lead to injuries, the legislature makes it clear that something much more is required for a deliberate intention claim. If the court were to find that the working conditions in this case constituted unsafe conditions sufficient for a deliberate intention claim, then almost every work-related accident could be used to prove a deliberate intention claim. That is not what the legislature intended when it devised the workers' compensation system. Neither alleged injury suffered by the plaintiff meets that standard, thus the

court **FINDS** that the defendant is entitled to summary judgment on all claims. Although finding that the plaintiff failed to prove any of the five factors justifies the granting of summary judgment, the court will quickly run through the remaining deliberate intention factors.

### B. Employer Knowledge

The plaintiff claims that Elementis was aware of the unsafe conditions that allegedly caused the injuries. The evidence for that claim is that both conditions were discussed multiple times at the company's safety meetings. While it is true that this evidence establishes that the defendant was aware of the conditions, it does not establish that the defendant "had actual knowledge . . . of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition." W. Va. Code § 23-4-2(d)(2)(B). The only evidence for either incident that the defendant was aware that the conditions created such a high risk or strong probability of serious injury was the plaintiff's assertion that he orally told his supervisors of the dangers. This does not establish that the employer was aware of any actual high risk or strong probability of injury, and given that the court has ruled that such a situation did not exist, it's clear that the employer could not have had such notice. The plaintiff has failed to meet the second requirement of a deliberate intention claim for both injuries.

### C. Safety Standard

The third requirement for a deliberate intention claim explains that the safety standard violated must be "specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions." W. Va. Code § 23-4-2(d)(2)(C). Regarding the earlier injury, the plaintiff cites a requirement of the International Property Maintenance Code (IPMC).

8

However, the plaintiff's safety regulation expert and the plaintiff's counsel both admit that the IPMC provision cited is a general safety standard. Regarding the later alleged injury, the plaintiff cites the "NIOSH Lifting Equation," but there is no question that the lifting standard does not apply to the act of pulling a heavy object on a pallet jack. With no other safety standards cited, there is no genuine issue of material fact that the plaintiff has failed to establish the third element of deliberate intention for both injuries.

D.     <em>Intentional Exposure</em>

Whether the court describes the plaintiff's working conditions at the Elementis plant as safe or unsafe, it is fair to say that the employer intentionally exposed the plaintiff to those conditions by requiring him to do his job. However, fulfilling the fourth requirement of a deliberate intention claim requires fulfilling the first three. The question isn't whether the employer exposed the employee to a working condition—that is obviously the case at all times—but whether the employer knew there was an unsafe condition that violated a safety standard and presented a high risk and strong probability of injury, yet exposed the employee to it anyway. Having found that the first there requirements were not met, the same is true for the fourth requirement.

E.     <em>Compensable Injury</em>

The final element requires that the intentional exposure to an unsafe condition resulted in a serious compensable injury. The February 6, 2010 injury was judged compensable for workers' compensation purposes. The defendant disputes that the injury, which was supposed to keep the plaintiff from working for two or three days, was a "serious" injury. There is no clear line on what makes an injury serious, and given that the plaintiff has failed to meet any of the four other

9

elements of a deliberate intention claim, the court declines to find whether the door-related injury was "serious" or not.

The September 20, 2011 injury was judged non-compensable by the ALJ. The defendant argues that case law in the Northern District of West Virginia instructs that an ALJ's decision that an injury was non-compensable means that the injury cannot support a claim of deliberate intention. The plaintiff points out that cases from the Northern District are not binding precedent on this court, and asks that the court find that an injury can still satisfy the fifth element of a deliberate intention claim after being judged non-compensable. Again, because the plaintiff has failed to meet any of the other four elements, the court declines to rule on this precedent-setting matter at this time.

### IV.    Conclusion

Deliberate intention claims exist so that an employee can hold his employer liable when the employer intentionally subjects the employee to a situation that the employer knows will probably cause serious injury. Such a circumstance is uncommon, and courts should not allow employees to prove these claims lightly. The balance of a no-fault workers' compensation claim system would be upset if courts lowered the standard for deliberate intention. In this case, the plaintiff allegedly suffered two injuries, and neither can be called anything other than exceptionally rare. Such rarity prohibits the plaintiff from proving the elements of a deliberate intention case as set out by the state legislature. If the court were to find that the working conditions in this case constituted unsafe conditions sufficient for a deliberate intention claim, then almost every work-related accident could be used to prove a deliberate intention claim. That is not what the legislature intended when it devised the workers' compensation system. The court **FINDS** that the plaintiff has failed to meet

its burden on at least four of the five elements as they relate to both alleged injuries, thus the defendant's motion for summary judgment is **GRANTED**. This case shall be removed from the active docket.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        January 17, 2013

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE